# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

MOHAMAD TLAIB, individually and on behalf of similarly situated individuals, )

     *Plaintiff*, )   Case No.

   v. )

KONTOOR US LLC, a Delaware corporation )

     *Defendant*. )

## CLASS ACTION COMPLAINT

Plaintiff Mohamad Tlaib ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, and for his Class Action Complaint against Defendant Kontoor US LLC ("Defendant" or "Kontoor"), alleges as follows based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. This is an action for damages and any other available legal or equitable remedies, for violations of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1, common law Unjust Enrichment, and common law Money Had and Received, resulting from Defendant's practice of charging its customers inflated prices in response to unlawfully imposed tariffs.

2. This lawsuit arises from Defendant's retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendant systematically passing on the costs of IEEPA tariffs to its own customers—

1

including Plaintiff—through elevated product prices, and then seeking a refund from the federal government for those same tariffs.

3. Beginning on February 1, 2025, President Trump issued Executive Orders that imposed IEEPA-based duties on certain imports from Canada, Mexico, and China. He later issued Executive Orders concerning tariffs on countries importing Venezuelan oil, and declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order 14193 (Feb. 1, 2025); Exec. Order 14194 (Feb. 1, 2025); Exec. Order 14195 (Feb. 1, 2025); Exec. Order 14257 (Apr. 2, 2025); Exec. Order 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The sweeping Tariff Executive Orders imposed an array of duties ranging from 10% to 145% based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Whereas the imposition of tariffs on foreign trade partners was intended to even international trade deficits, much of the cost of the applicable tariffs was passed on to American consumers who bore the brunt of tariff costs in the form of increased prices.

6. When goods are imported into the United States, United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff

---

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through a process known as liquidation. *See* 19 U.S.C. § 1504(b).

7. Defendant paid IEEPA tariffs when it imported the products and/or components of the products Plaintiff and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendant passed those costs on to Plaintiff and similarly situated consumers by inflating the prices of its products.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA and other statutes cited in the Tariff Executive Orders do not authorize the President to impose tariffs. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

9. As a result, any IEEPA tariffs charged to Defendant were unlawful for lack of statutory authorization, and Defendant is entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation or the liquidation process.

10. Indeed, Defendant *has* sought a refund of the tariffs it paid pursuant to the Tariff Executive Orders. On February 19, 2026, Defendant filed a complaint in the United States Court of International Trade in which it seeks a refund (with interest) of all tariffs that it has paid pursuant to the Tariff Executive Orders and IEEPA tariffs. *Kontoor US LLC v. U.S. Customs & Border Prot.*, No. 26-01059 (Ct. Int'l Trade Feb. 19, 2026).

11. However, Defendant *has already* passed such unlawful IEEPA tariff burdens onto Plaintiff and Members of the Class by directly charging elevated prices for its products. Plaintiff and Members of the Class were thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

12.     Despite having sought tariff refunds for itself in the Court of International Trade, Defendant has made no commitment to return any portion of its anticipated tariff refunds to the consumers who ultimately bore the costs of such tariffs through elevated prices.

13.     If Defendant receives a refund for the IEEPA tariffs, Defendant will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendant's retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

14.     The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.

15.     The existence and active trading of these claims confirms that the tariff refunds Defendant is positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendant's anticipated double recovery at consumers' expense is both real and imminent.

16.     Other corporations in Defendant's same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[2] Defendant could have enacted a similar payback program for Plaintiff and Class Members, yet chose not to.

---

[2] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/.

17. Even if Defendant does not receive a refund, it is still unfair, oppressive, unscrupulous, and causes substantial injury to consumers to charge consumers the cost of unconstitutional, unlawful IEEPA tariffs that provide no benefit to Plaintiff or other consumers in any way.

18. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1), as well as common law Unjust Enrichment and common law Money Had and Received, and for such other relief as the Court may deem just and appropriate.

## PARTIES

19. The Plaintiff, Mohamad Tlaib, is a resident and citizen of the state of Illinois.

20. Defendant Kontoor US LLC is a U.S.-based company organized in the State of Delaware with its headquarters located in Greensboro, North Carolina. Kontoor US LLC is an apparel company that designs, manufactures, sources and distributes apparel in the United States under various brand names, including Wrangler, Lee, Helly Hansen, and Musto.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction under 28 U.S. Code § 1332(d) because complete diversity exists between Kontoor and at least one member of the proposed class and the matter in controversy exceeds $5,000,000. Kontoor's 2025 revenue exceeded $3.15 billion, with only "approximately 27%" of the company's net revenues in 2025 having been generated in international markets.[3]

---

[3] Kontoor Brands, Inc., Annual Report (Form 10-K) at 42 (Feb. 24, 2026).

22.     This Court has personal jurisdiction over Defendant Kontoor because Defendant's principal place of business and corporate headquarters is located in Greensboro, North Carolina. Defendant is therefore "at home" in this State and subject to the general personal jurisdiction of this Court. In addition, Defendant maintains continuous and systematic contacts with the State of North Carolina, conducts substantial business within this District, and has purposefully availed itself of the privilege of conducting activities in this State, such that the exercise of jurisdiction comports with the requirements of due process and North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## COMMON FACTS

### DEFENDANT'S BUSINESS MODEL AND SUPPLY CHAIN

24.     Kontoor advertises, markets, sells, and distributes clothing and apparel throughout the United States.

25.     Kontoor sources a substantial majority of the products it sells – or components with which those products are made – from manufacturers and producers located overseas.

26.     Kontoor serves as the importer of record for such products and components and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

27.     Upon information and belief, the items Plaintiff purchased were imported from abroad during the IEEPA tariff period or were made with components imported during that period and were thus subject to tariff costs that were passed on to Plaintiff in the form of inflated prices.

6

28. For purposes of this Complaint, the "Class Period" is defined as February 1, 2025 through February 28, 2026—encompassing the period during which IEEPA tariffs were in effect and enforced by U.S. Customs and Border Protection.

29. Throughout the Class Period, Defendant passed the cost of IEEPA tariffs onto consumers, including Plaintiff and Members of the Class, by inflating the prices of products it sold.

30. Within and throughout the Class Period, Plaintiff purchased approximately $100 worth of various clothing items and accessories manufactured, marketed and sold by Defendant.

31. Plaintiff's purchases took place at several retail locations in the Chicagoland area.

32. On information and belief, the items that Plaintiff purchased were imported from countries or made from components subject to IEEPA tariffs.

33. Defendant paid IEEPA tariffs on such items that Plaintiff purchased and embedded the cost of those tariffs in the price charged to Plaintiff. But for Defendant's pass-through of IEEPA tariff costs, Plaintiff would have paid a lower price for the items he purchased.

34. Defendant's retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and Members of the Class offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendant's tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

35. As a result of Defendant's practice of passing on tariff costs to its customers, Plaintiff and Class Members were forced to pay higher prices reflecting costs that Defendant incurred as importer.

36. Plaintiff and the Members of the Class have unequal bargaining power with Defendant and were unable to negotiate with Defendant over the tariff costs embedded in the prices charged for Defendant's products.

37. Allowing Defendant to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or Class Members.

38. But for Defendant's pass-through of IEEPA tariff costs, Plaintiff and Class Members would have paid lower prices for Defendant's products.

#### DEFENDANT'S ANTICIPATED TARIFF REFUNDS AND RESULTING DOUBLE RECOVERY

39. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

40. The Court of International Trade later reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 679285 (Ct. Int'l Trade Mar. 5, 2026). The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

41. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

42. Accordingly, Defendant is entitled to substantial refunds for IEEPA tariffs it paid as the importer of record for goods sourced from countries subject to IEEPA tariffs.

43. To date, and despite having filed a complaint in the U.S. Court of International Trade seeking a refund of its unlawful tariffs paid, Defendant has not established any mechanism to refund to consumers the tariff costs Defendant passed through to them via elevated prices during the Class Period.

44. This presents an obvious problem: Although Defendant will recover or is positioned to recover tariff refunds on the tariffed goods it sold, Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendant. The risk of Defendant obtaining double recovery is therefore imminent.

45. Defendant is poised to be paid twice for the same unlawful tariff burden: once by its customers (including Plaintiff) through elevated prices, and once by the U.S. government through tariff refunds.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings his claims individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23:

> **Class:** All persons in the United States who, during the Class Period, purchased products imported into the United States by or for Defendant from countries subject to IEEPA duties and for which Defendant paid, deposited, or accrued IEEPA duties.

47. Excluded from the Class are: (1) Defendant; (2) Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose

9

claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel, and their experts and consultants.

48. **Numerosity**. The proposed Class contains Members so numerous that separate joinder of each member of the Class is impracticable. Upon information and belief, there are at least hundreds of thousands, if not millions, of proposed Class Members. The individuals who purchased items subject to IEEPA tariffs can be ascertained through records in the possession, custody, or control of Defendant and entities with whom Defendant has transacted in relation to the purchases at issue.

49. **Commonality and Predominance**. There are questions of fact or law common to the Class, which common questions predominate over any questions affecting only individual Members, including but not limited to the following:

   a. Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;
   b. Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices;
   c. Whether Defendant's retention of the unlawful IEEPA tariffs paid by the Class is unjust, oppressive, unscrupulous, or unfair;
   d. Whether Defendant misled consumers regarding pricing and tariff pass-through;
   e. Whether Defendant violated the NCUDTPA through its misrepresentations and omissions regarding pricing and tariff pass-through;
   f. Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariffs it passed through to Class Members;
   g. Whether the Class Members are entitled to restitution, actual damages, and attorneys' fees and costs.

50. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative Class, and the corresponding duties. Plaintiff has retained counsel competent and

10

experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiff.

51.     **Appropriateness.** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all Members of the Class is impracticable. The damages suffered by the individual Members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual Members of the Class to obtain effective relief from Defendant's misconduct. Even if Members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1**
**(on behalf of Plaintiff and the Class)**

52.     Plaintiff incorporates the foregoing allegations in Paragraphs 1–51 as if fully stated herein.

53.     At all times mentioned herein, Defendant engaged in "commerce" as defined by N.C. Gen. Stat. § 75-1.1, by engaging in business activities, including the importing and sale of clothing and apparel.

11

54. Kontoor violated the NCUDTPA under N.C. Gen. Stat. § 75-1.1 when it engaged in unlawful, unfair, and deceptive practices in trade or commerce by collecting unlawful tariff costs in the form of increased prices charged to consumers of its products.

55. Kontoor violated the NCUDTPA's prohibition on deceptive practices by failing to disclose to Plaintiff and other consumers that it could seek government refunds for IEEPA tariffs while simultaneously charging increased prices to offset those tariff costs, thereby concealing the material fact that consumers were paying costs that Defendant could later recoup from the government.

56. These misrepresentations and omissions were material to Plaintiff's and Class Members' purchasing decisions. A reasonable consumer, including Plaintiff, would not have paid tariff-inflated prices knowing that Defendant intended to seek government refunds for those same tariff costs without compensating consumers.

57. Defendant's conduct also violates the NCUDTPA's prohibition on unfair practices in that it offends public policy by permitting double recovery—Defendant collects tariff costs from consumers and then recovers the same costs from the government, resulting in a windfall for Defendant at consumers' expense.

58. Defendant's conduct as alleged herein is immoral, oppressive, and unscrupulous because it shifts the economic burden of unlawful taxes onto consumers while Defendant obtains the benefit of government refunds without passing such refunds on to consumers.

59. Furthermore, Defendant's conduct as alleged herein causes substantial injury to consumers, including Plaintiff and Class Members, who are deprived of money paid for unlawful IEEPA tariffs while receiving nothing of value in return, and who have no practical means of recovering those costs absent this litigation.

12

60.     In taking the actions set forth above, Defendant violated the NCUDTPA by engaging in deceptive and unfair practices in connection with the sale of consumer products to Plaintiff and Class Members.

61.     As a proximate result of Defendant's violations of the NCUDTPA, Plaintiff and the Class Members suffered actual economic damages equal to the amount of retail overcharge attributable to IEEPA tariff costs in the prices they paid for Defendant's products during the Class Period.

62.     There is no benefit to consumers from Defendant's conduct. The only party who benefits is Defendant, by realizing increased profits as a result of its conduct.

63.     Plaintiff and the Class Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

**COUNT II**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

64.     Plaintiff incorporates the foregoing allegations in Paragraphs 1–63 as if fully stated herein.

65.     Plaintiff and the Members of the Class conferred monetary benefits on Defendant by paying elevated prices for products that included unlawful IEEPA Tariff costs.

66.     Defendant has been unjustly enriched by shifting its unlawful IEEPA Tariff burden onto Plaintiff and the Class. Defendant collected tariff costs from consumers through elevated prices and is now positioned to recover refunds of those same tariff costs from the U.S. government.

13

67. Defendant has knowledge and appreciation of this benefit. Defendant knew it was passing IEEPA tariff costs onto consumers through elevated prices, and Defendant knew or should have known that it would be entitled to seek refunds of those same tariff costs from the government following the Supreme Court's invalidation of the IEEPA tariffs.

68. Defendant's retention of the money it received from Plaintiff and the Class is unjust and inequitable.

69. The IEEPA tariffs were unlawful because they lacked statutory authorization, as determined by the Supreme Court.

70. To the extent Plaintiff and the Class lack an adequate remedy at law, Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

71. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

72. Plaintiff and the other Members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched to the detriment of Plaintiff and the Members of the Class, and an order requiring Defendant to disgorge any additional profits or other benefit it has retained as a result of its unjust and unlawful conduct.

## COUNT III
### Money Had and Received
### (on behalf of Plaintiff and the Class)

73. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–72 above as if fully stated herein.

14

74. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class, not by Defendant.

75. Defendant received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

76. Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to U.S. Customs and Border Protection as duties on imported goods.

77. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

78. Defendant is now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the liquidation process or litigation in the Court of International Trade. Upon information and belief, Defendant has not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

79. The money that Defendant will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class–the consumers who paid elevated prices due to Defendant's tariff pass-through.

80. Defendant has not returned this money to Plaintiff or the Class.

81. In equity and good conscience, Defendant should not be permitted to retain any government refund proceeds corresponding to tariff costs already passed through to Plaintiff and

15

the Class. Those funds belong, in equity, to Plaintiff and the Class, and Defendant is obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an Order awarding the following relief as pled in the foregoing and judgment against Defendant as follows:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing his counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. An award of reasonable attorneys' fees, costs, and other litigation expenses;

d. An award of pre- and post-judgment interest as available under law;

e. Restitution and/or disgorgement of the amounts by which Defendant was unjustly enriched as a result of the conduct alleged herein; and

f. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: July 2, 2026

Respectfully submitted,

MOHAMAD TLAIB, on behalf of himself and others similarly situated

*/s/ James R. DeMay*
James R. DeMay (N.C. Bar No. 36710)
BRYSON HARRIS SUCIU &
DEMAY PLLC
900 West Morgan Street
Raleigh, NC 27603

16

Phone: (704) 941-4648
jdemay@brysonpllc.com

*Counsel for Plaintiff and the putative Class*

17